1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED
CLERK, U.S. DISTRICT COURT

07/28/16

CENTRAL DISTRICT OF CALIFORNIA
BY: _____GR_____ DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JOY ARONSON,

               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

Case No.  CV 15-08630-RAO

**MEMORANDUM OPINION AND ORDER**

## I.   INTRODUCTION

Plaintiff Joy Aronson ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

## II.   PROCEEDINGS BELOW

On June 22, 2012, Plaintiff applied for DIB alleging disability beginning November 14, 2007.  (Administrative Record ("AR") 180-86).  Her application was denied initially on November 29, 2012, and upon reconsideration on August 23, 2013.  (AR 79-124.)  On September 6, 2013, Plaintiff filed a written request for

hearing, and a hearing was held on October 8, 2014.  (AR 43-78, 140-41.)
Represented by counsel, Plaintiff appeared and testified, along with an impartial
vocational expert ("VE").  (AR 43-78.)  On November 21, 2014, the Administrative
Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to
the Social Security Act,[1] from November 14, 2007 through December 31, 2013.
(AR 36.)  The ALJ's decision became the Commissioner's final decision when the
Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  Plaintiff filed this
action on November 4, 2015.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether
Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821,
828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged
in substantial gainful activity from November 14, 2007, the alleged onset date
("AOD"), through December 31, 2013, the date last insured ("DLI").  (AR 27.)  At
**step two**, the ALJ found that through the DLI, Plaintiff had the severe impairments
of right shoulder adhesive capsulitis and biceps tendinitis, degenerative disc disease
of the lumbar spine, multiple right and left thumb and middle finger surgeries, a
history of spontaneous rib fracture in May and September 2011 due to osteoporotic
problems, and carpal tunnel syndrome with surgery on the right hand in October
2011.  (*Id.*)  At **step three**, the ALJ found that through the DLI, Plaintiff "did not
have an impairment or combination of impairments that met or medically equaled
the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,
Appendix 1."  (AR 29.)

Before proceeding to step four, the ALJ found that through the DLI, Plaintiff
had the residual functional capacity ("RFC") to:

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they
are unable to engage in any substantial gainful activity owing to a physical or
mental impairment expected to result in death, or which has lasted or is expected to
last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

2

> [P]erform light work . . . , including lifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to 6 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday, with the following additional restrictions:  limited to occasional performance of postural activities, no forceful gripping, grasping, torqueing with the right upper extremity, and limited to occasional over the shoulder movements with the right upper extremity.

(AR 29-30.)

At **step four**, based on Plaintiff's RFC and the VE's testimony, the ALJ found that through the DLI, Plaintiff was capable of performing past relevant work as a sales director and sales representative advertising.  (AR 35.)  Accordingly, the ALJ did not proceed to **step five**, and instead, found that Plaintiff was not under a disability from the AOD through the date last insured.  (AR 36.)

### III.   <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.

2001) (citations and internal quotations omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. **DISCUSSION**

Plaintiff contends that the ALJ:  (1) failed to properly consider the opinion of treating physician Neal S. ElAttrache, M.D., regarding her restrictions from using her right shoulder at shoulder level for prolonged periods of time; the opinion of treating physician Daniel Sanchez, M.D., regarding her ability to rarely reach up above the shoulder; and the opinion of consultative examiner Mark Wellisch, M.D., regarding her limitation to occasional pushing and pulling; (2) erred in rejecting the conclusions or observations of "other sources;" and (3) erred in the credibility determination.  (Joint Submission Regarding the Issues on Appeal ("Joint Sub.") at 4-9, 14, 15-17, 19-24, 30-31) (Dkt. No. 15).)  The Commissioner contends that: (1) the RFC for no forceful gripping, grasping or torqueing with the right upper extremity and occasional over the shoulder activities with the right arm "are reasonably consistent with the medical evidence;" (2) any error in not addressing the vocational report was harmless; and (3) the ALJ's credibility determination was proper and is entitled to deference.  (Joint Sub. at 9-14, 17-19, 24-30.)

### A. **The ALJ Erred In Considering the Opinions of Dr. ElAttrache, Dr. Sanchez, and Dr. Wellisch**

Plaintiff argues that the ALJ erred in not providing any reasons for rejecting portions of the opinions of treating orthopedic surgeon Dr. ElAttrache, treating

4

physician Dr. Sanchez, and examining physician Dr. Wellisch regarding restrictions on the use of her right shoulder at and above shoulder level and her ability to push and pull. (Joint Sub. at 5-9.) The Commissioner argues that the RFC "sufficiently captures" Plaintiff's restrictions on use of her right arm. (*Id.* at 9-14.) For the reasons set forth below, the Court agrees with Plaintiff.

### 1.      *Opinions of Dr. ElAttrache, Dr. Sanchez, and Dr. Wellisch*

The record includes a physician's statement and treatment notes from Dr. ElAttrache. On October 29, 2008, Dr. ElAttrache completed a form entitled, "Attending Physician's Statement Life and Disability Insurance." (AR 561-62.) He diagnosed Plaintiff with right shoulder subacromial impingement and biceps tendinosis with longitudinal biceps tear since November 14, 2007, and noted a July 17, 2008 MRI revealing evidence of a longitudinal tear of the biceps tendon in the occipital groove. (AR 561.) He stated that he had treated Plaintiff since July 31, 2008 on an as-needed basis, and her course of treatment includes physical therapy, cortisone injection, and monthly check-ups. (AR 561, 575.) He opined that Plaintiff was capable of sedentary activity, with "no activity that may aggravate or cause pain at right shoulder [illegible] use of right upper extremity." (AR 562.) He opined that Plaintiff could not perform excessive driving, flying in an airplane, moderate lifting, pushing, pulling, and more than moderate computer work. (*Id.*)

In a treatment note dated January 6, 2009, Dr. ElAttrache recommended that Plaintiff "try to limit her work-related activities and duties to functions that do not require prolonged use of the arm at or above shoulder level, do not require repetitive lifting, pushing, or pulling." (AR 354.) On June 25, 2009, Dr. ElAttrache noted that Plaintiff has a history of adhesive capsulitis with impingement and biceps tendonitis of the right shoulder. (AR 348.) He noted "some mild occasional episodes of recurrent capsular inflammation with recurrent activity done at or above shoulder level such as driving, use of the mouse for the computer, or certainly repetitive lifting overhead." (*Id.*) On examination, Dr.

ElAttrache found mildly positive impingement signs to Neer and Hawkins testing, slight stiffness at the end of her range of motion with overhead extension at about 165 degrees, external rotation at 90 degrees, and horizontal abduction lacking about 5 degrees. (*Id.*) He found good strength of her rotator cuff with some mild pain with heavy resistance testing of abduction and thumb-down position for supraspinatus testing. (*Id.*) There was mild discomfort with Speed's maneuver. (*Id.*) Dr. ElAttrache found Plaintiff "well enough that she can do her normal daily activities without any more aggressive intervention," and recommended that she be "permanently restricted for recurrent overhead pushing, pulling, lifting and use of the right shoulder at shoulder level for prolonged periods of time." (*Id.*)

On January 21, 2010 and June 19, 2012, Dr. Sanchez opined that Plaintiff could walk and stand less than one hour, sit for one to two hours, lift less than five pounds occasionally, and required three to ten 30-minute rest periods during the day. (AR 33, 505-06, 857-58.) He opined that Plaintiff was limited with repetitive movements and pushing and pulling with the right arm. (AR 857.) He opined that Plaintiff was unable to work an eight-hour day. (AR 33, 506, 858.) On August 29, 2014, Dr. Sanchez opined that Plaintiff was capable of standing for 15 minutes, walking for 20 minutes, and could not do prolonged sitting.[2] (AR 33, 1729-34.) She could lift and carry less than five pounds, and she was not capable of full time work. (AR 1731, 1733.) She could rarely reach up above the shoulders. (AR 1731.)

Dr. Wellisch conducted an orthopedic examination on October 15, 2012. (AR 1285-91.) He noted that Plaintiff indicated that she could not do "repetitive acts with her right upper extremity," but she could do most activities of daily living with the assistance of her husband." (AR 1285.) A physical examination of the upper extremities revealed slight tenderness anteriorly in the shoulders, but was otherwise normal. (AR 1288.) Grip strength was noted to be 35 pounds on the

---

[2] The ALJ incorrectly cited the date as September 29, 2014. (AR 33.)

right and 4 pounds on the left.  (AR 1289.)  Motor strength in the upper extremities was 5/5, sensation was well preserved, and reflexes were 2+ and symmetrical.  (*Id.*) An x-ray of the right shoulder showed no evidence of subluxation or degenerative changes in the glenohumeral joint or acromioclavicular joint.  (*Id.*)  Dr. Wellisch diagnosed right shoulder pain with probable rotator cuff tendinopathy, degenerative facet disease in the lumbar spine with chronic low back pain, and possible tendinitis of the abductors of the right hip.  (AR 1290.)  He opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could occasionally push and pull, could walk and stand six hours out of an eight-hour day, could occasionally bend, crouch, stoop, and crawl, and "[l]adder climbing is limited by shoulder pain."  (*Id.*)

### 2.    *Pertinent Law*

An ALJ is obligated to consider medical opinions of record, resolve conflicts, and analyze evidence.  *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989); 20 C.F.R. § 404.1527(c).   Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat.  *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).   A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled to greater weight than a non-examining physician's opinion.  *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (citations omitted).   If a treating physician's opinion is contradicted by another medical opinion, an ALJ must give "specific and legitimate reasons" for rejecting it.  *Orn*, 495 F.3d at 633.  If a treating physician's opinion is not contradicted, it may be rejected only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830.

///

///

### 3.    Discussion

The ALJ discussed the opinions of Dr. ElAttrache, Dr. Sanchez, and Dr. Wellisch, including the restrictions on the use of the right shoulder at shoulder level for prolonged periods and occasionally pushing and pulling.  (AR 32, 34.)  The ALJ assigned significant weight to Dr. ElAttrache's opinion, finding it consistent with and supported by the "substantial medical evidence of record."  (AR 35.)  The ALJ gave little weight to the opinion of Dr. Sanchez, finding that his opinion that Plaintiff was limited in walking, sitting and lifting was not supported by the objective medical findings and by Plaintiff's activities of daily living.  (AR 35.)  The ALJ gave considerable weight to Dr. Wellisch's opinion, finding it "overall consistent with and supported by the record," but finding support in the record for further reducing Plaintiff's RFC.  (*Id.*)  The ALJ gave little weight to the opinion of orthopedic examiner Dr. Tauber, who opined that Plaintiff was unable to do repetitive motion activities; could not work at or above the shoulder or do activities such as computer work; could not carry and lift luggage, a computer or magazines; and was disabled and permanently disabled from her prior occupation.  (AR 32-33, 656.)  The ALJ found Dr. Tauber's opinion not supported by the objective medical evidence, and noted that the determination of disability is reserved to the Commissioner.[3]  (AR 35.)

The ALJ credited the part of Dr. ElAttrache's opinion regarding over the shoulder movements, but effectively rejected the portion that restricted Plaintiff from the use of the right shoulder at shoulder level for prolonged periods of time.  (AR 30, 32, 35.)   The ALJ gave no reasons for rejecting this portion of Dr. ElAttrache's opinion.  (AR 35.)  An ALJ "need not discuss all evidence presented

---

[3] Plaintiff does not argue that the ALJ improperly discounted the opinion of Dr. Tauber, but points out that both Dr. Tauber and Dr. ElAttrache opined limitations on work at shoulder level, and the ALJ purported to accept Dr. ElAttrache's opinion and reject Dr. Tauber's opinion without discussing the inconsistency.  (Joint Sub. at 6.)

to her.   Rather, she must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citations and internal quotation marks omitted); *see also Lester*, 81 F.3d at 830-31 (Even if a treating physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record.").   Here, Plaintiff testified that she could not perform her past relevant work because of her inability to type for more than a few minutes due to pain in her right arm, right shoulder, and the scapula area, and she alleged similar limitations with all activities involving her hands, including writing and driving. (AR 56, 58, 254, 278.)   The ALJ's lack of explanation for rejecting probative portions of Dr. ElAttrache's opinion was error.

Similarly, the ALJ erred in effectively rejecting the portion of Dr. Wellisch's opinion regarding a limitation to occasional pushing and pulling, without explanation.  (AR 33-35.)  *See Lester*, 81 F.3d at 830 (An examining physician's opinion may be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record.").

The ALJ gave little weight to the opinion of Dr. Sanchez "that [Plaintiff] is limited in walking, sitting, and lifting" based on the objective evidence and Plaintiff's daily activities, but the ALJ failed to explain why she rejected Dr. Sanchez' opinion regarding Plaintiff's limited ability to reach over the shoulder. (AR 35.)  This was error.

The Court cannot find such errors harmless.  At the hearing, the vocational expert testified that a hypothetical person with Plaintiff's RFC who is also limited to "occasional fine manipulation, gross manipulation, gripping and grasping, handling and fingering, as well as rarely writing, typing, use of the mouse, use of hand controls, pushing and pulling," and occasional twisting and torqueing with the hands could not perform Plaintiff's past relevant work.  (AR 71.)  Here, it is unclear from the record whether a preclusion from work at shoulder level with only the

right upper extremity, a limitation to occasional pushing and pulling, and the ability to reach over the shoulder only rarely would preclude Plaintiff's past relevant work or whether other work exists in significant numbers in the national economy that Plaintiff could perform.  Thus, remand is warranted so that the ALJ can properly evaluate the opinions of Dr. ElAttrache, Dr. Sanchez, and Dr. Wellisch.

## B. The ALJ Erred In Rejecting the Vocational Analyses by Ms. Hernandez and Mr. Bruno

Plaintiff argues that the ALJ erred in ignoring and rejecting the functional capacities evaluation by Elizabeth Hernandez, a vocational evaluator, and the vocational conclusions by Gene Bruno, a vocational rehabilitation counselor.  (Joint Sub. at 15-17, 19-20.)  The Commissioner argues that any error in addressing the vocational evaluation and conclusions ("vocational analyses") was harmless.  (Joint Sub. at 17-19.)

### 1. Vocational Analyses by Ms. Hernandez and Mr. Bruno

The record contains vocational analyses by Ms. Hernandez and Mr. Bruno.  (AR 411-33.)  Ms. Hernandez conducted a functional capacities evaluation (work tolerance) based on her observations of Plaintiff in a simulated work setting over a period of three days from August 8-10, 2011.  (AR 420-33.)  The August 12, 2011 evaluation analyzes Plaintiff's physical tolerances, stamina, endurance and ability to return to work as a Western Sales Director.  (*Id.*)  Ms. Hernandez included statistics and information on Plaintiff's participation patterns, physical demonstrations and tolerances, maximum demonstrated pounds, subjective indications of concentration and pain, medication intake, psychometric profile, learning style, and personality/work values inventory results.  (AR 421-31.)  Ms. Hernandez noted that Plaintiff demonstrated limitations for use of the right upper extremity throughout her attendance in the functional capacity evaluation; she reported the need for pain breaks to rest her right arm throughout the simulated workday; she reported increased pain, the need to increase her medication intake,

and discontinued physical tolerances; she demonstrated limitations for unsupported reaching, light manipulation, keyboarding/computer use, lifting and carrying; and she reported concerns with driving and increased pain with writing activities. (AR 431.) Plaintiff's participation resulted in a 15% loss of productivity due to pain breaks, other unscheduled work breaks, and a 10-minute early departure to lunch on one occasion. (*Id.*) Ms. Hernandez concluded that Plaintiff did not demonstrate the necessary physical tolerances required to perform her previous occupation of Western Sales Director or the ability to perform sustained work activity on a regular and continuous basis. (AR 431-32.)

On September 29, 2011, Mr. Bruno provided a vocational analysis to Plaintiff's trial attorneys regarding Plaintiff's ability to perform her usual and customary work activities as a Western Sales Director. (AR 411-33.) Mr. Bruno conducted an appraisal interview with Plaintiff on July 20, 2011, reviewed medical and other records, orthopedic consultation reports by Dr. Tauber, and considered Ms. Hernandez' functional capacities evaluation. (*Id.*) Adopting Ms. Hernandez' conclusions, Mr. Bruno concluded that Plaintiff demonstrated limitations for use of the right upper extremity, including limitation for unsupported reaching, light manipulation, keyboarding/computer use, lifting and carrying, and reported concerns with driving; Plaintiff demonstrated a 15% loss of productivity due to pain breaks, other unscheduled work breaks, and a 10-minute early departure to the scheduled lunch break; and Plaintiff did not demonstrate the necessary physical tolerances to perform her previous occupation of Western Sales Director or the ability to perform sustained work activity on a regular and continuous basis. (AR 416-17.)

### 2. Pertinent Law

Vocational rehabilitation counselors and vocational evaluators are not "acceptable medical sources" under the regulations, 20 C.F.R. § 404.1513(a), but they qualify as "other source[s]." 20 C.F.R. § 404.1513(d)(3) (social welfare

agency personnel are considered "other sources"); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("'[O]ther sources' . . . include . . . rehabilitation counselors . . . . "). The ALJ may reject the opinions of these other sources by giving reasons that are "germane" to that source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

### 3. Discussion

As the Commissioner concedes, the ALJ did not discuss the vocational analyses or give any reasons for discounting the observations and conclusions of Ms. Hernandez and Mr. Bruno. (Joint Sub. at 17; AR 25-36.) This was error. The Commissioner argues that any error in not discussing the vocational analyses was harmless because the analyses "are based entirely upon Plaintiff's subjective responses," "the evaluation does not appear to compare Plaintiff's abilities to the specific performance of her job as sales director, and how it is generally performed," and the opinions of Ms. Hernandez and Mr. Bruno regarding Plaintiff's inability to work is an issue reserved to the Commissioner. (Joint Sub. at 17-19.)

First, "[t]he Commissioner's *post hoc* rationalizations are insufficient to cure the ALJ's errors because the ALJ, not the Commissioner, must provide the reasons germane to each 'other source.'" *Smiggs v.* Astrue, 2011 WL 4544052, at *8 (D. Or. Sept. 28, 2011) (citing *Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991)). Second, the Commissioner's arguments are, nevertheless, unavailing.

The vocational analyses were not, as the Commissioner argues, based entirely upon Plaintiff's subjective responses. The vocational analyses include findings and observations gathered by Ms. Hernandez over a three-day simulated work setting evaluation, and included the review of medical records, orthopedic consultation reports, job descriptions, employment records, traffic reports, and an insurance evaluation. (AR 411-33.)

The Commissioner next argues that the error is harmless because "the evaluation does not appear to compare Plaintiff's abilities to the specific performance of her job as sales director, and how it is generally performed." (Joint Sub. at 18.)  The Court disagrees.  The vocational analyses considered, *inter alia*, "Job Descriptions, West Coast Sales Director," an interview with Plaintiff discussing why she felt she could not perform her job, and Plaintiff's performance in a simulated work setting.  (AR 411, 413-14, 418-19, 421.)  Accordingly, the vocational analyses reasonably do take into account Plaintiff's ability to perform her previous job as sales director as performed.  (AR 416-17, 431-32) (listing Plaintiff's duties as Western Sales Director and concluding that Plaintiff did not demonstrate the necessary physical tolerances to perform her previous job).  To the extent the vocational analyses do not take into account how the job is generally performed, the analyses make clear that Plaintiff did not demonstrate the necessary physical tolerances to perform any sustained work activity on a regular and continuous basis.  (AR 417, 432.)

Finally, the Commissioner argues that the error is harmless because the opinions of Ms. Hernandez and Mr. Bruno regarding Plaintiff's inability to work is an issue reserved to the Commissioner, and as such, the vocational analyses and the conclusions are not entitled to any great weight.  (Joint Sub. at 19.)  However, the vocational analyses do not merely state an opinion regarding Plaintiff's inability to work.  (AR 411-33.)  The vocational analyses include numerous observations and findings about how Plaintiff's impairment affects her ability to work, which the ALJ did not address.  (*Id.*)  "Other source" observations regarding "how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

The Court cannot conclude that the error was harmless. *See Stout v. Comm'r SSA*, 454 F.3d 1050, 1056 (9th Cir. 2006) (where ALJ fails to properly discuss

competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination). Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting the vocational analyses of Ms. Hernandez and Mr. Bruno, if the ALJ determines rejection is warranted.

### C.   **The ALJ Erred In Evaluating Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in discrediting her subjective testimony and statements about the ability to use the right arm to lift, push, reach, and drive; to tolerate prolonged sitting, standing, and walking; and to remain productive throughout a day.  (Joint Sub. at 20-24, 30-31.)  The Commissioner argues that the ALJ's credibility determination is entitled to deference because it was supported by substantial evidence, and properly supported by the record.  (Joint Sub. at 24-30.) For the reasons set forth below, the Court agrees with Plaintiff.

#### *1. Plaintiff's Testimony*

At the administrative hearing, Plaintiff testified that she is 58 years old and has a college degree.  (AR 52.)  She was hit by a sanitation truck as a pedestrian in November 2007, was out of work for six or seven weeks, then returned to work as a sales director in January 2008 until she was terminated a couple months later.  (AR 52-56.)  After she was terminated, she went "on interviews" and looked for work between March and June.  (AR 57.)  On July 22, 2008, she became unable to look for work and do work due to severe pain in her right arm, right shoulder and scapula area.  (AR 55, 57-58.)

Plaintiff testified that as a sales director, she spent "a good deal of time doing computer work, . . . preparing for my appointments, [and] travel[ing] 3-500 miles a week of driving."  (AR 54.)  She also traveled on airplanes two to four times a month to visit clients.  (*Id.*)  She testified that after her accident, working on the computer "for a few minutes" would cause her arm and shoulder to hurt.  (AR 56.)

She was fired for "not being able to do all the paperwork and not being able to do the travel." (*Id.*)

Plaintiff testified that in addition to her right arm and shoulder pain, she developed back pain, hand pain, finger pain, SI joint problems, right hip problems, left hip problems, and left SI joint pain. (AR 59.)  She had "multiple injections and a lot of physical therapy" since the accident.  (*Id.*)  She was diagnosed with osteoporosis in May 2011, had spontaneous rib fractures in May and September 2011, has a torn right biceps tendon, and started seeing a therapist in May 2012 for depression and anxiety. (AR 60-61.)  She was hospitalized for problems related to thyroiditis in May 2011. (AR 62.)  She is in pain every day. (AR 65.)  Some of the pain medication makes her drowsy and she "tend[s] to lie down for about an hour during the day." (*Id.*)  She can walk about 20 minutes; sit for close to an hour before needing to get up, stretch, and move around; stand for 10-15 minutes; and lift two to three pounds. (AR 66.)  She no longer does chores, laundry, "dishwasher and all sorts of stuff." (AR 66-67.)  Dr. Sanchez told her that she could not hold a full time job based on her limitations, pain, and number of medical appointments. (AR 64.)  In the summer of 2011, she underwent a functional capacity testing and was told that she was unable to work on a regular sustained basis. (AR 65.)

In a Function Report – Adult dated August 21, 2012, Plaintiff reported that she spends most of her time reading, watching television, doing light exercise (mainly walking), laundry, and errands, such as going to the supermarket, cleaners, pharmacy, and doctor. (AR 214.)  She feeds her dog, but cannot walk him due to pain and restrictions of the right arm and shoulder. (AR 215.)  Her husband helps with the dog, chores, meal preparation, and driving. (*Id.*)  She cares for her hair with her left arm "because it is painful to raise my right arm above my shoulder." (*Id.*)  She can prepare sandwiches, cereal and milk, and reheat leftovers. (AR 216.)  She cannot lift pots with food and water, and cannot stir frequently. (*Id.*)  She can do the laundry, but needs help with folding items and putting them in the closet

15

(reaching and hanging things up).  (*Id.*)  She needs help with all other chores, including ironing, vacuuming, and "all other household chores" due to pain in her right arm and shoulder.  (AR 216-17.)  She can drive 20-30 minutes at a time.  (AR 217.)  She shops for groceries once or twice a week, and if her husband is not available, someone else loads the groceries into the car and unloads them when she gets home.  (*Id.*)  She is unable to lift, squat, bend, stand, reach, sit, kneel, complete tasks, and concentrate due to pain in her right arm and shoulder, as well as back pain and pain in her left hip.  (AR 219.)  She can walk for 30 minutes before needing to rest for a few minutes.  (*Id.*)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*.  The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the

reasons explained in this decision." (AR 34.)  The ALJ relied on the following reasons:  (1) activities of daily living; (2) conservative treatment; (3) work history; (4) receipt of long-term disability; and (5) lack of supporting objective evidence. (AR 34.)  No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1:  Activities of Daily Living

The ALJ found that Plaintiff's "allegation that she can only walk 20 minutes, sit one hour, stand 10 to 15 minutes, and lift two to three pounds . . . is contradictory to her statements that her daily activities include driving, running errands, and shopping.  These daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 34.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The fact that Plaintiff carried on daily activities such as limited driving, limited errands, and limited shopping does not detract from her overall credibility, as the record does not show that these activities consumed a substantial part of Plaintiff's day.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  Further, the mere ability to perform some daily activities is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting").  The critical difference between such activities "and activities in a full-time job are that a person

has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison*, 759 F.3d at 1016).  Indeed, according to Plaintiff, she needs to lie down for an hour during the day and she relies on her husband for most chores.  (AR 65-67.)  The ALJ did not discuss these limitations on Plaintiff's daily activities. (AR 14.)

Furthermore, the ALJ specifically discounted only Plaintiff's statements about her ability to stand, sit, and lift based on her activities of daily living.  (AR 34.)  To the extent the ALJ discredited Plaintiff's other subjective testimony, including testimony regarding her right arm and shoulder, based on Plaintiff's activities of daily living, the ALJ did not clearly identify the evidence she found not credible.  *See Holohan*, 246 F.3d at 1208.

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b.  Reason No. 2:  Conservative Treatment

The ALJ found that Plaintiff "received conservative treatment only."  (AR 34.)  A conservative course of treatment may properly discredit a claimant's allegations of disabling symptoms.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007), *cert. denied*, 552 U.S. 1141 (2008) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

Here, the ALJ acknowledged "lots of treatment and physical therapy," and that Plaintiff did not want pain medications after she was rear-ended in a car accident, but the ALJ did not specifically identify what treatment she found

conservative.  (AR 34, 516-17.)  Plaintiff argues that her treatment was "not all conservative," and noted that she had cortisone injection therapy in the right shoulder.  (Joint Sub. at 23 (citing AR 373).)  *See also* AR 370.  Surgery on her right shoulder was recommended several times, but Plaintiff was told that "no guarantee as to outcome can be offered."  (AR 656, 705, 1285.)  Plaintiff had five surgeries on hands and fingers between 2011 and 2013.  (AR 59-60.)  The Commissioner argues that Plaintiff's treatment consisted primarily of physical therapy.  (Joint Sub. at 28 (citing AR 1437-87, 1543-67, 1568-1627, 1628-78).)  Given that the ALJ did not specifically identify the evidence supporting her conclusion that Plaintiff's treatment was conservative, the Court does not find this reason for discounting Plaintiff's testimony sufficiently specific, clear and convincing.

### c.  Reason No. 3:  Work History

The ALJ found that Plaintiff returned to work after the AOD and looked for work until June 2008, which "raises an additional question as to whether [Plaintiff's] continuing unemployment is actually due to her medical condition, as opposed to non-medical factors."  (AR 34.)

A poor work history may constitute a proper reason for discounting a claimant's testimony.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding ALJ's finding that claimant had "extremely poor work history" and showed "little propensity to work in her lifetime . . . negatively affected her credibility").  Here, Plaintiff testified that she returned to work in January 2008 for a couple of months after the accident with the sanitation truck, but she lost the job because she could not handle the job responsibilities with her right arm, shoulder and neck pain.  (AR 53-56.)  She went on interviews for other magazine jobs between March and June 2008, but she did not get the jobs.  (AR 57.)  Beginning in July 2008, her right arm pain became so severe that she could not work and went on

state disability.[4]  (AR 55, 57.)  In light of Plaintiff's efforts to work until she was in too much pain to work, the ALJ's conclusion that Plaintiff was not motivated to work or her unemployment was due to non-medical factors is not sufficiently specific, clear and convincing.

### d.  Reason No. 4:  Receipt of Long-Term Disability

The ALJ found that Plaintiff "has been receiving long term disability in the amount of approximately $6,000 . . . [which] raises an additional question as to whether [Plaintiff's] continuing unemployment is actually due to her medical condition, as opposed to non-medical factors."  (AR 34.)

Plaintiff argues that the ALJ speculated that her receipt of long-term disability benefits makes her lack of work non-medical.  (Joint Sub. at 24.)  The Commissioner argues that the ALJ is entitled to draw reasonable inferences from the evidence.  (Joint Sub. at 29.)

The Court agrees that the ALJ did not identify any actual evidence that Plaintiff lacks the motivation to work.  Furthermore, Plaintiff's receipt of long-term disability benefits is not "inconsistent with h[er] disability allegations," and "does not reasonably support an inference that she is unmotivated to work or lacks credibility."  *Anderson v. Comm'r of Soc. Sec. Admin.*, 2013 WL 440703, at *5 (C.D. Cal. Feb. 5, 2013) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### e.  Reason No. 5:  Lack of Supporting Objective Evidence

The remaining reason for discounting Plaintiff's subjective testimony – lack of supporting objective evidence – cannot form the sole basis for discounting pain testimony.  *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot

---

[4]     The transcript reflects confusion about the alleged onset date and whether the date is July 22, 2008 or November 14, 2007.  (AR 48, 55.)

form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility.  Accordingly, remand is warranted on this issue.[5]

### D.   Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances).  Before ordering remand for an award of benefits, three requirements must be met:  (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Id.* (citations omitted).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Id.* (citation omitted).

---

[5]  The Commissioner argues that SSR 16-3p, which revises the evaluation of subjective symptom testimony and rescinded SSR 96-7p, does not apply here because the ALJ's decision is dated before the effective date of the ruling.  (Joint Sub. at 24 n.4.)  *See also* SSR 16-3p, 2016 WL 1119029.  Plaintiff argues that SSR 16-3p applies because the date of the Joint Submission is after the effective date of the ruling.  (Joint Sub. at 30.)  The Court need not resolve the issue of whether SSR 16-3p applies retroactively because under either standard, the ALJ did not make proper findings.  *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Roper v. Colvin*, 2016 WL 3940035, *3-4 (N.D. Ill. July 21, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision).

Here, remand for further administrative proceedings is appropriate. On remand, the ALJ shall (1) reassess the opinions of Dr. ElAttrache, Dr. Sanchez, and Dr. Wellisch and provide legally adequate reasons for discounting or rejecting any portion of the opinions, including, if warranted, a legally sufficient explanation for discounting limitations for work at shoulder level, a limitation to occasional pushing and pulling, and/or a limitation to only rarely reaching over the shoulder; (2) reassess the vocational analyses of Ms. Hernandez and Mr. Bruno and provide germane reasons for discounting or rejecting their opinions, if warranted; and (3) reassess Plaintiff's subjective allegations in light of SSR 16-3p, which would apply upon remand. The ALJ shall then reassess Plaintiff's RFC, considering the medical opinions, the "other source opinions," and Plaintiff's subjective allegations, and proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## V.    **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 28, 2016

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

22